IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| PORT CITY NEUROSURGERY | ) | |
| --- | --- | --- |
| & SPINE, PC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:19-cv-948 |
| | ) | |
| BLUE CROSS AND BLUE SHIELD | ) | |
| OF NORTH CAROLINA, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

LORETTA C. BIGGS, District Judge.

Port City Neurosurgery & Spine, PC ("Port City" or "Plaintiff") initiated this action in state court against Blue Cross and Blue Shield of North Carolina ("BCBS" or "Defendant"), seeking "a declaratory judgment . . . regarding Defendant's obligations under N.C. Gen. Stat. § 58-3-190." (ECF No. 3 at 2.) Defendant removed the action to this Court on the basis of federal question jurisdiction, asserting that Plaintiff's claim is completely preempted by ERISA, the Employee Retirement Income Security Act. (ECF No. 1 ¶ 8.) Before the Court are Plaintiff's Motion to Remand, (ECF No. 9), and Defendant's Motion for Judgment on the Pleadings, (ECF No. 7). For the reasons that follow, Plaintiff's motion to remand will be granted and Defendant's motion will be dismissed.

I. **BACKGROUND**

Plaintiff, a North Carolina professional corporation, "is a specialty physician practice" that "provides emergency services." (*See* ECF Nos. 3 ¶ 1; 10 at 2.) Starting in September 2016, Port City "contracted with [BCBS] to provide medical and surgical services, including

for emergencies, to [BCBS's] members." (ECF Nos. 1-18 ¶ 3; 13 at 3.) At its core, Plaintiff's action alleges that "BCBS is required by Section 58-3-190 of the North Carolina General Statutes to reimburse Port City for the emergency services Port City provides to BCBS members." (ECF No. 3 ¶ 9.)

N.C. Gen. Stat. § 58-3-190 (hereinafter "§ 58-3-190") provides that every insurer, as the term is defined in the statute, "shall provide coverage for emergency services to the extent necessary to screen and to stabilize the person covered under the plan and shall not require prior authorization of the services if a prudent layperson . . . would have believed that an emergency medical condition existed." § 58-3-190. In its complaint, Plaintiff alleges that "[d]espite [this] statutory obligation to pay Port City for emergency medical services, BCBS has repeatedly failed and refused to do so." (ECF No. 3 ¶ 15.)

Rather than provide a comprehensive accounting of these alleged failures, Plaintiff's complaint provides "one very recent example" of an occasion when BCBS allegedly failed to pay Port City for providing emergency medical services to one of its members. (*Id.* ¶ 16.) According to Plaintiff's complaint, sometime in 2018, it performed an emergency lumbar spine fusion surgery on a BCBS member who was badly injured in a motorcycle accident. (*See id.*) Plaintiff operated without seeking prior authorization from BCBS, based on its judgment that the injuries sustained by the motorcyclist constituted an emergency. (*See id.* ¶¶ 19–22.) Plaintiff then submitted a claim to Defendant for the surgery and Defendant refused to pay, allegedly because Plaintiff had not sought prior authorization for the procedure. (*Id.* ¶¶ 24, 26, 29.)

Given this and similar alleged instances, on February 5, 2019, Port City brought this state law declaratory judgment action seeking a declaration that: "BCBS is required to

reimburse Port City pursuant to [§ 58-3-190] for any emergency services Port City provides to BCBS members, as defined in the statute, regardless of whether prior authorization is sought, and BCBS cannot impose a prior authorization requirement for emergency neurosurgery and spine surgery." (*Id.* ¶ 39.) Plaintiff's prayer for relief further requests declaratory judgments "that BCBS is required to reimburse Port City for the lumbar spine fusion surgery" it performed on the aforementioned motorcyclist and, essentially, that BCBS must abide by § 58-3-190. (*See id.* at 8.) Though Plaintiff's complaint does request a declaration that Defendant must reimburse it for the surgery described, it appears not to request any specific money damages or recovery, either for the unidentified motorcyclist's treatment or for the care Plaintiff reportedly provided to other similarly situated patients. (*See id.*)

ERISA first emerged as an issue in this litigation on August 16, 2019, during discovery, when Plaintiff provided Defendant with "an example list of individuals" that received emergency medical services from Plaintiff for which Defendant allegedly denied reimbursement. (ECF No. 1 ¶ 7.) Of the twelve individuals on the example list, three were "participants in health benefits plans governed by [ERISA]" and one of the three had assigned benefits to Port City.[1] (*See* ECF Nos. 1 ¶¶ 7, 12; 13 at 2.) In light of this discovery, on September 16, 2019, Defendant removed the action to this Court. (ECF No. 1.)

## II. MOTION TO REMAND

The Court begins its analysis with Plaintiff's Motion to Remand because that motion will determine whether the Court possesses subject matter jurisdiction. According to Defendant, removal was proper here because "Plaintiff's claim for declaratory relief is

---

[1] As explained below, while healthcare providers like Plaintiff generally lack standing to sue insurers under ERISA, they may acquire derivative standing to sue if they have secured an assignment of benefits from a plan participant or beneficiary that enables them to sue on the assignor's behalf.

3

completely preempted by ERISA." (*See* ECF No. 1 ¶ 8.) Plaintiff disagrees, arguing that remand is required because Defendant's removal was untimely and because "ERISA does not preempt Port City's declaratory judgment action." (ECF No. 10 at 9–10.) As explained below, the Court finds that ERISA does not completely preempt Plaintiff's claim and thus the case must be remanded. Accordingly, the Court need not analyze whether Defendant's removal was timely and cannot rule on Defendant's Motion for Judgment on the Pleadings.

### A. Standard of Review and Complete Preemption

A party can remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). It is the burden of the removing party to demonstrate that federal jurisdiction is appropriate. *Strawn v. AT&T Mobility LLC,* 530 F.3d 293, 296 (4th Cir. 2008). Furthermore, because "removal jurisdiction raises significant federalism concerns, [courts] must strictly construe [it]," remanding whenever "federal jurisdiction is doubtful." *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994).

Typically, the well-pleaded complaint rule requires courts to examine the contents of a plaintiff's complaint to determine if an action "arises under" the laws of the United States and is therefore suitable for resolution in federal court. *See Prince v. Sears Holdings Corp.*, 848 F.3d 173, 177 (4th Cir. 2017). However, "[a]n exception to the well-pleaded complaint rule occurs when a federal statute completely preempts state law causes of action." *Id.* "Complete preemption, really a jurisdictional rather than a preemption doctrine, confers exclusive federal jurisdiction in certain instances where Congress intended the scope of a federal law to be so broad as to entirely replace any state-law claim." *Franciscan Skemp Healthcare, Inc. v. Cent. States Joint Bd. of Health & Welfare Tr. Fund,* 538 F.3d 594, 596 (7th Cir. 2008). Thus, any claim that

4

is completely preempted "can be brought originally in, or removed to, federal court." *Kearney v. Blue Cross & Blue Shield of N.C.*, 233 F. Supp. 3d 496, 501 (M.D.N.C. 2017).

### B. ERISA Preemption

Because "[t]he purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans," ERISA's "civil enforcement mechanism is one of those provisions with such 'extraordinary pre-emptive power' that it 'converts an ordinary state common law complaint into one stating a federal claim.'" *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208–09 (2004) (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65–66 (1987)). As the Fourth Circuit has explained, ERISA's civil enforcement mechanism, § 502(a),

> completely preempts a state law claim when the following three-prong test is met: (1) the plaintiff must have standing under § 502(a) to pursue its claim; (2) its claim must 'fall within the scope of an ERISA provision that it can enforce via §502(a)'; and (3) the claim must not be capable of resolution 'without an interpretation of the contract governed by federal law,' i.e., an ERISA-governed employee benefit plan.

*Prince*, 848 F.3d at 177 (quoting *Sonoco Prods. Co. v. Physicians Health Plan, Inc.*, 338 F.3d 366, 372 (4th Cir. 2003)).[2] Thus, to determine whether a remand to state court is necessary, the Court must apply the Fourth Circuit's three-part test to see if Plaintiff's action is completely preempted by ERISA.[3]

---

[2] Section 502(a) is codified as 29 U.S.C. § 1132(a). However, for the sake of clarity, the Court will follow the common practice of referring to this provision as "502(a)."

[3] "Some circuits have identified the [complete preemption test] . . . as a two-part test: (1) whether the individual asserting the claim could have at some point brought the claim under § 502(a)(1)(B); and (2) whether there is no other independent legal duty that is implicated by the defendant's actions." *Kearney*, 233 F. Supp. 3d at 503 n.5 (collecting cases). These two-part tests are substantively equivalent to the Fourth Circuit's three-part test. First, the inquiry into "whether the individual asserting the claim could have at some point brought the claim under § 502(a)(1)(B)" simply aggregates together the first two prongs of the Fourth Circuit's test. Second, the Fourth Circuit's third prong—its inquiry into whether a claim can be resolved without interpreting an ERISA plan—mirrors the second prong

5

### C. Analysis

*i.    Does Plaintiff's claim fall within the scope of 502(a)?*

The Court finds the second prong of the Fourth Circuit's test—whether Port City's claim falls within the scope of 502(a)—to be the most logical place to start its inquiry. *See Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1350 (11th Cir. 2009) (considering whether plaintiff was asserting a claim that could be brought under 502(a) before determining whether plaintiff had standing under 502(a) to bring such a claim).

Section 502(a) provides, in relevant part, that an ERISA action can be brought "by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under . . . the plan." 29 U.S.C. § 1132(a). Thus, "core" 502(a) claims involve challenges to the administration of ERISA plans or allegations that plan participants or beneficiaries were improperly denied benefits. *See Prince*, 848 F.3d at 178; *Lippard v. Unumprovident Corp.*, 261 F. Supp. 2d 368, 376 (M.D.N.C. 2003). In contrast, claims that do "not require interpretation [of an ERISA plan], but instead interpretation and application of an existing state statute," fall beyond the scope of § 502(a). *See Emergency Servs. of Zephyrhills, P.A. v. Coventry Health Care of Fla., Inc.*, 281 F. Supp. 3d 1339, 1345–46 (S.D. Fla. 2017) (holding that emergency service providers' claim against an HMO for reimbursement for emergency treatment pursuant to a state law did "not seek to recover, clarify, or enforce rights under [an ERISA plan]" and so "plainly" did not fall within the scope of 502(a)).

---

considered by other circuits—whether there is no legal duty independent of ERISA implicated by the defendant's actions. *See Prince*, 848 F.3d at 179 (determining that a plaintiff's claim could not be resolved without interpreting an ERISA plan because "[t]he only duty [defendant] had to [plaintiff] . . . stemmed from the ERISA plan").

6

Here, Defendant has put forward two arguments for why Plaintiff's request for a state law declaration interpreting a state statute is actually a claim falling within the scope of ERISA's civil enforcement mechanism. First, in a footnote in its Notice of Removal, Defendant argues that "while Port City may not have pled that it is seeking to recover benefits due under the terms of [an ERISA] plan, that result is clearly contemplated by Port City." (ECF No. 1 ¶ 14 n.1.) Thus, Defendant contends, "Port City's claim could . . . be described as a claim to recover benefits due under the terms of a plan." (*Id.*) Plaintiff, however, argues that its "complaint does not seek coverage for or recovery on behalf of members of [ERISA] plans" and, in fact, does not seek "recovery at all." (ECF Nos. 10 at 13; 18 at 3.) In its brief opposing remand, Defendant appears to have abandoned this line of argument. (*See* ECF No. 13 at 9–13.) The Court concludes that Plaintiff's complaint cannot be read as seeking to recover benefits due to Plaintiff under an ERISA plan. To the extent that Port City is seeking to recover anything in this action, it is seeking reimbursement for the services it provided to the motorcyclist only, and Defendant concedes that the motorcyclist was not the single participant in an ERISA-governed plan that assigned benefits to Plaintiff as described above. (*See id.* at 4.) Thus, even if Plaintiff was seeking to recover benefits for the motorcyclist, such an action could not be brought as a 502(a) claim.

Second, Defendant contends that Plaintiff's action seeks a clarification of rights to future ERISA benefits. (*Id.* at 12.) To support this argument, Defendant first observes that three of the twelve patients on the example list provided by Plaintiff "are members of self-funded ERISA plans." (*Id.* at 10.) According to the North Carolina Department of Insurance, "self-funded or self-insured" health plans are governed by ERISA, not North Carolina insurance law. (ECF No. 13-1 at 13.) Thus, Defendant argues, such self-funded health plans

7

are beyond the scope of § 58-3-190. (ECF No. 13 at 11.) Defendant further argues that this means that determining whether BCBS was required to reimburse Plaintiff for any emergency medical services Plaintiff provided to a participant in a self-funded health plan would require interpreting "the ERISA plan's definition of 'emergency services.'" (*Id.* at 8.) Accordingly, Defendant concludes, "for these members, Port City's declaration under state statute is actually a disguised claim for declaration of rights to future ERISA Plan benefits," and so falls within the scope of 502(a). (*Id.* at 12.)

The trouble with this argument, as Plaintiff notes, is that Plaintiff's action "does not seek coverage for or recovery on behalf of members of self-funded health plans." (ECF No. 18 at 3.) That is, Plaintiff is not seeking a declaration that Defendant was required to reimburse it for the care it provided to any particular individual who was a member of a self-funded ERISA Plan. Plaintiff *does* seek a declaration "that BCBS is required to reimburse Port City pursuant to [§ 58-3-190] for any emergency services Port City provides to BCBS members, as defined in the statute." (ECF No. 3 ¶ 39.) However, if, as Defendant contends, ERISA-governed plans fall outside the scope of this law altogether, then a court would not need to interpret the terms of an ERISA-governed plan to issue or deny the declaration Plaintiff seeks; it would merely need to interpret and apply an existing state statute. *See Zephyrhills*, 281 F. Supp. 3d at 1346. Therefore, because this action will not require clarifying any patient's rights to future ERISA benefits, it falls outside the scope of 502(a). As the three-part complete preemption test set forth by the Fourth Circuit is conjunctive, the Court's analysis could end here, requiring remand. However, because the issues presented by this litigation are not cut and dry, the Court finds it prudent to also consider the two remaining prongs of the Fourth Circuit's test.

8

ii. *Does Plaintiff have standing to assert its action as a 502(a) claim?*

Next, the Fourth Circuit's test asks whether Port City has standing under 502(a) to bring its claim against Defendant. *Prince*, 848 F.3d at 177. Generally, healthcare providers like Port City are "not 'participants' or 'beneficiaries' under ERISA and thus lack independent standing to sue under ERISA." *Gables Ins. Recovery, Inc. v. Blue Cross & Blue Shield of Fla., Inc.*, 813 F.3d 1333, 1338 (11th Cir. 2015) (quotation omitted), *cert. denied*, 137 S. Ct. 296 (2016).

This rule is subject to an important exception: "a provider may acquire derivative standing to sue under ERISA if the provider secures a written assignment from a 'participant' or 'beneficiary' of that individual's right to payment of medical benefits." *Kearney*, 233 F. Supp. 3d at 503 (collecting cases). This derivative standing "is based upon the ability of a health care provider to step into the shoes of the plan participant or beneficiary." *Total Renal Care of N.C., L.L.C. v. Fresh Market, Inc.*, No. 1:05CV00819, 2008 WL 623494, at *10 (M.D.N.C. Mar. 6, 2008). Thus, a written assignment does not end the standing inquiry because an assignee "only has standing to assert whatever rights the assignor possessed." *Feldman's Med. Ctr. Pharmacy, Inc. v. CareFirst, Inc.*, 902 F. Supp. 2d 771, 780 (D. Md. 2012) (quotation omitted). This means a health care provider has no standing to assert its action as a 502(a) claim if its plan members "would not have standing to assert the state law claim brought [by the provider]." *See Zephyrhills*, 281 F. Supp. 3d at 1346–47. Furthermore, simply because a plaintiff healthcare provider possesses the right to sue an insurer in the plaintiff's capacity as an assignee does not mean it must do so; the plaintiff remains free to sue the insurer on its own behalf. *See Conn. State Dental Ass'n*, 591 F.3d at 1347 (emphasizing that a "provider that has received an assignment of benefits and has a state law claim independent of the claim arising under the assignment holds two separate claims"). Determining whether a plaintiff has standing to bring

9

its action as a 502(a) claim therefore requires establishing which "hat" a plaintiff is wearing. *See Sonoco*, 338 F.3d at 372 (explaining that while "a plan sponsor is entitled to wear different hats," performing some functions as a fiduciary and others on its own behalf, the sponsor only has standing to pursue an action under 502(a) if its action is related to its fiduciary responsibilities). A plaintiff healthcare provider wears its own hat—that is, acts on its own behalf rather than standing in the shoes of another—when it "allege[s] a harm 'independent from any harm suffered by ERISA plan beneficiaries' or participants." *See Feldman's*, 902 F. Supp. 2d at 783 (quoting *Sonoco*, 338 F.3d at 374).

Here, Port City does not deny that it has been assigned benefits by one patient who participated in an ERISA plan. (ECF No. 18 at 2.) Rather, Port City argues that it is not standing in the shoes of that patient to assert any claim falling under 502(a). (*Id.* at 2–3.) Once again, the Court finds itself in agreement with Plaintiff. As discussed above, Plaintiff's action does not seek money damages or to recover benefits wrongly denied; it seeks a declaration that BCBS must abide by the terms of § 58-3-190, a state law that requires insurers to reimburse providers for emergency services provided to their members. Nowhere has Defendant explained how a patient would have standing to sue an insurer for violating § 58-3-190. Nor has it explained how Plaintiff is otherwise suing for a harm that accrued to a patient rather than for a harm suffered by Plaintiff itself. Defendant has therefore failed to carry its burden of demonstrating that Port City has standing to assert its action as a 502(a) claim.

    iii.    *Can Plaintiff's claim be resolved without interpreting an ERISA plan?*

The final inquiry is whether Plaintiff's claim is capable of resolution without interpreting an ERISA plan. *Prince*, 848 F.3d at 177. Here, the parties essentially reargue their

positions regarding the second prong of the Fourth Circuit's test. Defendant argues that self-funded health plans are not subject to § 58-3-190 and therefore that Plaintiff "cannot advance its declaratory judgment claims as to members of these ERISA Plans without interpretation of the plan documents themselves." (ECF No. 13 at 13.) Plaintiff rejoins that its "request for a declaratory judgment that BCBS has to follow [§ 58-3-190] and provide coverage for emergency services as defined under [that law] without pre-authorization lies solely in the interpretation of [§ 58-3-190]" and "does not involve interpretation of an ERISA plan." (ECF No. 10 at 15.)

As explained above, the Court agrees with Plaintiff. Determining whether § 58-3-190 obligates BCBS to perform in a certain way requires no interpretation of an ERISA plan if, as Defendant has argued, such ERISA plans are not governed by § 58-3-190. This action, then, is similar to cases that only require interpreting a contract between a healthcare provider and an insurer when the contract at issue is separate and apart from any ERISA-governed plan. As courts have regularly found, such cases are not preempted because the contract creates an independent legal duty that allows for the action to be resolved without interpreting the ERISA plan. *See, e.g.*, *Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 947–49 (9th Cir. 2009) (a hospital may bring a state law claim of negligent misrepresentation against a plan administrator for reneging on an oral contract to reimburse the hospital for medical care provided to a plan-participant); *Franciscan*, 538 F.3d at 596–98 (same); *see also Davila*, 542 U.S. at 210 (explaining that actions that implicate an "independent legal duty" separate from 502(a) are not preempted by ERISA). Similarly, in this case, Plaintiff argues that a statute, § 58-3-190, creates an independent legal duty that Defendant must abide by. Plaintiff's claim can therefore be resolved without interpreting an ERISA plan.

For the reasons outlined herein, the Court enters the following:

**ORDER**

IT IS THEREFORE ORDERED that Plaintiff's Motion to Remand, (ECF No. 9), is GRANTED. This case shall be REMANDED to the General Court of Justice of North Carolina, Orange County Superior Court Division. Accordingly, Defendant's Motion for Judgment on the Pleadings, (ECF No. 7), is dismissed.

This, the 17th day of April 2020.

/s/ Loretta C. Biggs
United States District Judge